IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DARNELL RELIFORD                                                          PLAINTIFF

vs.                                  Civil No. 04-4115

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                    DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

      Darnell Reliford (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), ceasing his receipt of disabled adult child disability benefits, pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423,* and *§ 1602* of Title XVI, *42 U.S.C. § 1381a*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

      Both parties have filed appeal briefs in this matter (Doc. #8 & 9). The history of the administrative proceedings is contained in the respective appeal briefs and will not be recounted herein, except as is necessary.

      Plaintiff alleges that he remains disabled due to: osteoporosis; osteopenia; acid reflux; arthritis; migraine headaches; pain; scoliosis; fatigue; weakness; numbness; history of gunshot wound to right lower extremity; full scale IQ of 62; hypertension; stiffness of joints; and, side effects of medication. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

The Plaintiff's administrative hearing was held on March 16, 2004 (T. 29-63), after which the ALJ issued his written decision, dated April 29, 2004 (T. 12-18). Plaintiff then sought review by the Appeals Council (T. 6). On July 17, 2004, Plaintiff's request for review was denied by the Appeals Council (T. 3-5), thereby making the decision of the ALJ the final decision of the Commissioner. From that decision, Plaintiff appeals (Doc. #1, 8). This matter is before the undersigned by consent of the parties (Doc. #2).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.*

In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).* Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v.*

AO72A
(Rev. 8/82)

*Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and

applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*.

**Discussion:**

It is readily apparent from the administrative record that there are further material, relevant medical records in existence which are not included in the administrative record. During the administrative hearing, the Plaintiff testified that he regularly sought treatment in Joliet, Illinois from his treating physician, Dr. M. Arjaz[1] (T. 50, 51). Within forms he completed and submitted to the SSA, Plaintiff reported his treatment with Dr. Arjaz, as well as treatment by Dr. Kalumani Sivarajan and Dr. Rajeen Meath, also from Joliet, Illinios (T. 106, 128, 127, 126, 125, 82). Within the medical records submitted from Joliet, Illinios, reference is made to physicians whose treatment records are not included in the administrative transcript. For example, test results of tests ordered by Dr. Sivarajan are included in the administrative record, yet Dr. Sivarajan's treatment notes are not included. A progress note from November 13, 1997, indicates that blood is draw "per Dr. Smith['s]" order (T. 177), yet there are no treatment notes from a Dr. Smith (T. 175). There are no medical records from Dr. Sivarajan or Dr. Smith in the administrative record; nor were said records considered by the ALJ while rendering his decision.

Likewise, the ALJ failed to fully and fairly consider objective medical evidence of Plaintiff's osteoporosis. The report from Plaintiff's bone density test reveals the following:

---

[1]The correct spelling of this physician's name is unclear. It appears in the record with the following spellings: Arjaz, Aijaz and Aijma.

AO72A
(Rev. 8/82)

BONE DENSITY REPORT:

History: 49 year old black mail is being treated for osteoporosis. History of Monogammopathy.

Reference examination: none

LUMBAR SPINE:

Bone mineral density (BMD) as determined from L-1 through L-4 is 1.021 gm/cm2.

BMD is 85% of young-adult reference population and 88% of age-matched population.

T-score is -1.6 (standard deviations of young-adult mean).

Z-score is -1.3 (standard deviation of age-matched mean).

Current risk of spinal fracture is increased apparoximately (sic) 3 times when compared to young adults (T).

PROXIMAL FEMUR:

BMD as determined in the left femoral neck is 0.732 gm/cm2.

BMD is 68% of young adult reference population and 80% of age-matched population.

T-score is -2.2.

Z-score is -1.2.

Current risk of hip fracture is increased approximately 4.6 times when compared to young adults.

Comments: None

Conclusions: Osteopenia changes based on World Health Organization criteria.

World Health Organization Criteria

> Normal: T-score above -1 SD
> Osteopenia: T-score between -1 and -2.5 SD
> Osteoporosis: T-score below -2.5 SD
> Severe Ostoporosis: T-score below -2.5 with the presence of fractures.

(T. 179-180).

However, the ALJ failed to mention these objective medical findings when rendering his decision. Plaintiff's bone density test results should have been considered and discussed when the ALJ ruled on Plaintiff's appeal of the cessation of his adult child disability benefits.

Likewise, the ALJ failed to fully and fairly develop Plaintiff's allegation of borderline intellectual functioning. Although the ALJ and the consultative examiner[2] determined that while Plaintiff's full scale IQ of 62 is valid[3], they also determined that he did not have the deficits of adaptive behavior so as to be diagnosed with Mild Mental Retardation. *See Diagnostic and Statistic Manual of Mental Disorders, pp. 39-41 (4th Edition 1994).* However, the ALJ failed to consider or discuss the impact of Plaintiff's valid full scale IQ on his previous diagnosis of Borderline Intellectual Functioning. *See Diagnostic and Statistic Manual of Mental Disorders, p. 684 (4th Edition 1994).* Borderline Intellectual Functioning can be used when the focus of clinical attention is associated with borderline intellectual functioning, i.e., an IQ of roughly 71 to 84. However the differential diagnosis between Borderline Intellectual

---

[2] C. Yates Morgan, Ph.D., was Plaintiff's consultative mental health examiner (T. 131-133).

[3] C. Yates Morgan, Ph.D. completed a report which included the following information: "[p]atient appeared to take the testing situation seriously and put effort into responding to test items"; and, "[h]is intelligence rat[ing] is significantly lower [than] the score of 78 which he obtained in 1967. It is unusual for an individual with an intelligence rating of 62 to be able to drive and to relate socially as well as this individual, but there was no overt indication of malingering. The results of the testing appear to be valid" (T. 131-132).

-6-

Functioning and Mental Retardation, i.e., an IQ of roughly 70 or below, is difficult when the coexistence of certain mental disorders, such as schizophrenia, is involved. According to analysis of the hearing officer who first ruled that Plainttiff's benefits should be ceased, Plaintiff's adult child disability benefits were granted in 1974 based upon his borderline intellectual functioning and his markedly paranoid ideation. Yet, the record is devoid of any records of Plaintiff's mental disorders at the time his application for benefits was granted. The only reference to the medical and psychological basis of Plaintiff's benefit award appears in the summary by the hearing officer. However, the records from 1967, which the hearing officer relied upon are not included in the administrative record before the undersigned.

The ALJ devoted a good portion of his decision to the issue of whether Plaintiff is mentally retarded. However, he failed to adequately address the effect, if any, Plaintiff's borderline intellectual functioning would have on his ability to perform substantial gainful employment activity. Despite the ALJ's finding that Plaintiff suffered from the severe impairment of borderline intellectual functioning, the ALJ barely makes mention of what effects, if any, said severe impairment would have on Plaintiff's ability to perform substantial gainful activity. Case law indicates that borderline intellectual functioning should be considered a severe impairment. *Hunt v. Massanari, 250 F3d 622, 625 (8th Cir. 2001); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997).* After careful consideration of the record evidence, we question the ALJ's failure adequately discuss the plaintiff's alleged diagnosis of borderline intellectual functioning. "Although a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case", *see Senne v. Apfel, 198 F. 3d 1065, 1067 (8th Cir. 1999),* the ALJ is not free to ignore

AO72A
(Rev. 8/82)

medical evidence, but rather must consider the whole record." *Reeder v. Apfel, 214 F. 3d 984, 988 (8th Cir. 2000)*. In the case at bar, the ALJ's disregard for the medical evidence submitted in its entirety relative to Plaintiff's borderline intellectual functioning is not harmless error. Plaintiff alleged and was granted adult child disability benefits due, at least in part, to his condition of borderline intellectual funcitoning from the onset of the application process, through his appeal of the cessation of his benefits. This issue is not new, and cannot properly be ignored. In his discussion of the issue of mental retardation, the ALJ failed to consider the entire record before him. The decision indicates the ALJ failed to adequately or properly consider either plaintiff's allegations, or the medical evidence pertaining to his borderline intellectual functioning. Therefore, this matter must be reversed and remanded for consideration of the entire record.

Upon remand, the parties are encouraged to fully and fairly develop the record. The ALJ has a duty to fully and fairly develop the record, even when Plaintiff is represented by counsel. *Battles v. Shalala, 36 F.3d 43,44 (8th Cir. 1994)*, citing *Boyd v. Sullivan 960 F.2d 733,736 (8th Cir. 1992)* and *Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983)*. The ALJ's duty to develop the record is based upon the premise that the ALJ hearing is not an adversarial proceeding, rather an administrative hearing where the goals of the Commissioner and the advocates should be the same, i.e. "deserving claimants who apply for benefits receive justice." *Battles, supra.*, citing *Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988)*. There is no bright line test for determining when the Secretary has failed to develop the record. The determination in each case must be made on a case by case basis. *Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1052 (6th Cir. 1983)*; see *Battles, id.* Further, in considering this issue,

AO72A
(Rev. 8/82)

our inquiry is whether Plaintiff was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, a reviewing court will not remand. *Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir.1993)*, citing *Phelan v. Bowen, 846 F.2d 478, 481 (8th Cir.1988)*.

Here, the ALJ failed to adequately develop the record. He was made aware of relevant medical records by virtue of Plaintiff's testimony, Plaintiff's written reports and the hearing officer's decision. However, he failed to obtain, review or consider those records in making his decision about Plaintiff's disability claim. Plaintiff was clearly prejudiced by the ALJ's failure to fully and fairly develop the record. The record indicates that Plaintiff received medical treatment in Joliet, Illinois, which was not fully documented in the administrative record. Nonetheless, those records were not made a part of the administrative record and were not considered. Plaintiff reported his physical and mental difficulties and impairments to the Commissioner, and the names of all of the medical doctors and facilities from which he sought treatment. Yet, all of the treatment records were not obtained. Despite the disappointing lack of contribution on the part of Plaintiff's counsel, Mr. Charles Barnette, the ALJ's failure to develop the record is nonetheless error.

Plaintiff's date of birth is October 10, 1953. Therefore, he is 52 years of age as of the date of this decision. He was awarded adult child benefits in 1967 at the age of 14 (T. 103, 12-18, 39, 131-133). Plaintiff has spent his entire adult life on disability benefits. Many of the consultative mental examiner's findings are based upon Plaintiff's self report (T. 131-133). Such information should not be found significantly reliable without corroboration. The Commissioner is encouraged to obtain as much corroborative information as possible with

AO72A
(Rev. 8/82)

respect to these self reports from Plaintiff, who is a 50 year old man who has a full scale IQ of 62. Upon remand, based upon the evidence of record, the undersigned suggests that the Plaintiff be afforded further consultative evaluation, to include a work related, functional mental health and physical health capacity evaluations. Additionally, the undersigned suggests that the Commissioner obtain any and all records and opinions from Plaintiff's treating physician(s) with respect to Plaintiff's mental and physical residual functional capacity. Likewise, on remand, the ALJ is encouraged to consider all of Plaintiff's impairments in combination when rendering his decision.

In light of the undersigned's decision to remand this matter, it is unnecessary to address other issues raised by the parties.

**Conclusion:**

Accordingly, we conclude that the decision of the ALJ is not supported by substantial evidence, and the decision of cessation of Plaintiff's adult child disability benefits, should be reversed and this matter should be remanded to the Commissioner for full and fair development of the administrative record, to specifically include all objective medical records of Plaintiff, from the relevant time period.

ENTERED this 27th day of December, 2005.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)